1          HONORABLE RONALD B. LEIGHTON

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
8                              AT TACOMA

GRANGE INSURANCE                     CASE NO. C13-5362 RBL
9    ASSOCIATION, et al.,

                                     ORDER ON CENTURY'S MOTION
10                Plaintiffs,          FOR SUMMARY JUDGMENT AND
                                     MOTION FOR A PROTECTIVE
11        v.                         ORDER

12   DARYL LUND, et al.,

13                Defendants,         [Dkt. #s 15 & 38]

14        v.

15   CENTURY SURETY COMPANY, et al.,

16

17                Third Party Defendants.

18

19          THIS MATTER is before the Court on Third Party Defendant Century Surety Company's

20   Motion for Summary Judgment [Dkt. #15] and on Century's related Motion for Protective Order

21   [Dkt. #38].

22          This is the third lawsuit arising from a bar fight in which Defendant Dvojack was

23   severely injured by a fellow patron, Defendant Abbott.  The procedural history is long and

24

ORDER - 1

complicated—"tortured," as Century aptly describes it—and will not be fully repeated here. However, some flavor and context is required.

## I. BACKGROUND

Dvojack (through his Guardian, Spurgitis) sued Abbott, the Star Tavern's owners (Jo & Ja, Inc., and its owner, Daryl Lund), and the bartender (Laurie Rager) in Thurston County Superior Court.  Jo & Ja's insurer, Century, defended Jo & Ja, Lund, and Rager under a reservation of rights.  Century's policy included a general liability coverage with a $1 million limit, and an "assault" endorsement with a $250,000 "wasting" limit.

Unsurprisingly, a dispute arose over the policy limits available for Dvojack's claims against Jo & Ja and Lund, and Century brought a Declaratory Judgment Action in this Court [Cause No. 12-cv-5731RBL], seeking a determination that (only) the smaller limit applied.  Jo & Ja and Lund claimed that the $1 million limit applied, and asserted counterclaims for breach of contract, violations of the Washington Consumer Protection Act, and bad faith, all based primarily on Century's claim that the limit was less.  They also alleged related claims that Century had violated its duties by "misrepresenting" the limits, and by failing to communicate and take advantage of an opportunity to settle the underlying claim within policy limits.  [Dkt. #14 in Cause No. 12-5731RBL]

The parties filed cross Motions for Summary Judgment in that case, which they now refer to as "the First Action."  Century's Motion sought only a determination that only the wasting limit applied. [Dkt. #20 in Cause No. 12-5731RBL].  It did not directly seek dismissal of (or any other ruling on) the bad faith/breach of contract counterclaims.  The Lund parties' cross Motion for Summary Judgment sought a determination as a matter of law that the larger limit applied.  It also sought a determination that Century's insistence on the smaller limit was a breach of its duty

to defend, and that that breach entitled them to attorneys' fees under *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).   [*See* Dkt. #35 in Cause No. 12-5731RBL, and the Lund parties' Proposed Order granting its Motion, attached thereto].  Finally, they sought a stay of the First Action pending the resolution of the Thurston County tort action, claiming that that case would resolve factual issues that, in their view, required resolution before the "limits" issue could be determined.

In March of 2013, this Court determined as a matter of law that the $250,000 wasting limit applied (and that the $1 million limit did not).  [*See* Dkt. # 46 in that case]. It declined to stay the action, and held that Century's assertion of the smaller limit was not bad faith as a matter of law.  It granted Century's Motion on the only issue it presented—the applicable limit. It denied Jo & Ja and Lund's Motion on the limited issues it presented—the claim that the larger limit applied, and that Century had violated its duties by insisting on the smaller one.  It entered a judgment [Dkt. #47] in Century's favor, and Jo & Ja and Lund appealed [Dkt. #48].

This Court's Order apparently triggered a "covenant judgment settlement"[1] between Dvojack and the Thurston County tort action defendants—Century's insureds.  Those defendants consented to judgment, and assigned their rights and bad faith claims against Century to Dvojack.   Dvojack agreed not to execute on the judgments.

Meanwhile, Rocky Mountain Grange (which insured Lund under two fire policies, a homeowner's policy and an umbrella policy) had filed its own Declaratory Judgment Action in

---

[1] Among other things, Jo & Ja and Lund assigned their rights and claims (breach of contract, bad faith, CPA, etc.) against their insurer to Dvojack.  Abbott subsequently entered a similar agreement, although Century points out that he was not insured under its policy and never tendered Dvojack's claims against him to Century.  The terms of the settlement(s) are outlined in Dkt. #50 in the First Action.

ORDER - 3

1  Lewis County, seeking a determination that its policies did not obligate it to defend or indemnify

2  Lund, or anyone else, from the claims asserted by Dvojack in the Thurston County tort litigation.

3  It nevertheless had been defending Lund under a reservation of rights, and it apparently paid

4  Dvojack some amount as part of the covenant judgment settlement.

5      That Lewis County case became *this* case when Dvojack (standing in the shoes of

6  underlying tort defendants) asserted[2] there his newly-acquired third-party bad-faith claims

7  against Century, and Century removed the case to this Court.  Because the only remaining claims

8  in this entire litigation were, and are, Dvojack's bad faith claims[3] against Century, this Court

9  agreed that Century had properly removed the case.  [*See* Dkt. #s 30 & 35 in this case].  Thus—

10  except for the appeal of this Court's final Order and judgment in the First Action—the last

_____

[2] The parties trade supportable but ultimately irrelevant accusations of "forum shopping." The machinations that led to these charges are part of the tortured history of this case, and they shed some light on the issues raised in the current Motions.

Dvojack attempted to assert a claim against Rocky Mountain Grange in the Thurston County tort action, but his motion to amend to do so was denied.  His effort triggered the Lewis County dec action.  Dvojack asserted third party claims against Century in that case, while it was still in state court.  He apparently did not serve his third party complaint on Century, but he did cite the pendency of those claims in an effort to convince this Court to abstain from ruling in the First Action, claiming that they were "parallel" proceedings.  That Motion was denied in the same Order that determined the coverage issue. [Dkt. #46 in the First Action].

After this Court resolved the "limits" issue and entered judgment in Century's favor, Century sought to re-open the First Action.  It asked this Court to issue a further "indicative" ruling (target audience: the Lewis County Superior Court) that its Order (1) pre-empted the bad faith claims Dvojack was then asserting against Century, (2) precluded the assignment of its insureds' rights against Century to Dvojack, and/or (3) required adjudication of those claims here, rather than in the Lewis County case. That Motion was denied. [Dkt. #54 in the First Action].

Century nevertheless achieved its third goal, because it had already removed the Lewis County dec action to this Court, two days *before it even filed* its Motion to Re-Open the First Action. [Dkt. #1 in this case].

[3] The Court uses the term "bad faith claims," perhaps too broadly, as shorthand for all of Dvojack's extra-contractual claims against Century: Unfair Claims Practices, Consumer Protection Act, and Insurance Bad Faith.  [*See* Dkt. #1-10 at Ex. H]  All are similar, and all arise from the same factual allegations.

1  remnants of this litigation are in this Court, in this case.  The current Motions require the Court

2  to ascertain the scope and breadth of what is left.

3  **II. THE CURRENT MOTIONS**

4        Century seeks Summary Judgment on Dvojack's bad faith/breach of contract claims [Dkt.

5  #15].  As it did in seeking an "indicative ruling" in the First Action, Century argues that the merit

6  of its position on the available limits was already determined by this Court in the First Action.  It

7  argues that this Court's Order in that case necessarily adjudicated the bad faith/breach of contract

8  claims that had been (or could have been) asserted against it by Jo & Ja and Lund prior to the

9  time they assigned those claims to Dvojack.  It claims that the resulting judgment is *res judicata*

10 as to all of the bad faith claims asserted here.  [*See* Dkt. #15].

11       Dvojack's current bad faith claims include allegations that Century:

12   •   failed to communicate with its insureds regarding his ($1 million) settlement demand;

13   •   failed to settle within the (allegedly larger) policy limit;

14   •   used extrinsic evidence to support its claim that the smaller, wasting limit applied;

15   •   generally placed its own monetary interests above the interests of its insured;

16   •   after the judgment, offered less than the available wasting limit to settle the

17       underlying claims; and

18   •   improperly conditioned its post-judgment settlement offer of the "rest" of its wasting

19       limit on a release of not only its insureds, but of Century itself.

20 [*See* Dkt. #1-10, Ex. H; Dkt. #43 at 7-9]

21       Dvojack sought a continuance [Dkt. #17] of Century's Summary Judgment Motion, to

22 permit him to conduct discovery into his newly-acquired and recently-asserted bad faith claims.

23 He emphasized that, after the Court ruled against him in the First Action, Century made a

24

1    settlement offer that was conditioned on a release of any claims against it.   He also claimed that

2    Abbott's bad faith claims were not and could not have been addressed in the First Action.   His

3    Motion was granted and he was permitted time to conduct discovery.   [Dkt. #32]   Dvojack's

4    ensuing discovery requests prompted Century's Motion for a Protective Order [Dkt. #38].

5         Dvojack seeks broad discovery into Century's handling of his claims against its insureds,

6    including the claims file, and communications between and among assigned defense counsel and

7    Century's in-house and outside coverage counsel.   He specifically seeks a complete privilege log

8    and all settlement-related communications between the various attorneys (in-house claims,

9    outside defense, and in-house and outside coverage counsel) and Century.

10        Century asks the Court to protect it from this discovery.   It repeats its core argument, that

11   the First Action already adjudicated the bad faith claims, before they were even assigned to the

12   party now asserting them.

13        Century's Motion for Summary Judgment does not directly address at least one basis for

14   Dvojack's bad faith claim: that Century conditioned its offer to settle Dvojack's claims for the

15   "rest" of the wasting limit on Dvojack's agreement to release not only its insured, but to release

16   Century as well.   Century's Motion for a Protective Order claims that it did not do so, but

17   concedes that the privileged communications on this topic should be part of a *Cedell in camera*

18   review.   The Summary Judgment Motion claims that the adjudicated claims and the current

19   claims are identical, and purports to demonstrate that fact using a side by side comparison of the

20   claims.

21        But its comparison demonstrates instead that the "conditional settlement" claim was not

22   (and, of course, could not have been) asserted earlier:

23

24

| Counterclaims against Century in the First Action (Ex. 5) | Cross-Claims against Century in This Action (Ex. 6) |
|---|---|
| <u>Third Claim: Violation of WAC 284-30-330 and Washington Consumer Protection Act, RCW 19.86 et seq.</u>" alleging that Century "violated WAC 284-30-330(1) and 284-30-350(1) by misrepresenting the effect of insurance policy provisions" and "failed to disclose all pertinent benefits, coverage or other provisions of the policy." | <u>Third Claim: Violation of WAC 284-30-330 and Washington Consumer Protection Act, RCW 19.86 et seq.</u>" alleging that Century "violated WAC 284-30-330(2) and 284-30-350(5) by failing to acknowledge and act reasonably promptly upon communications. . . with respect to claims arising under the Policy" and requesting cross-claimants to "sign a release to receive the benefits of insurance coverage." (*Id.* at ¶¶ 6.1-6.3, pp. 17-18) |
| (*Id.* at ¶¶ 7.1-7.[3], p. 14) | |

[Dkt. #15 at 9]  These claims allege violations of similar laws, but they are not based on the same facts; they are not the same.

It is true that some of Dvojack's current bad faith claims are directly related to (and, as will be seen, necessarily dependent on) its primary claim that the available limit was higher.  But Century does not acknowledge that its Motion in the First Action did not actually *seek* an adjudication of any bad faith claims. Or that this Court's Order—while terminating the litigation, on the specific issues actually litigated there—did not address the bad faith claims, beyond the claim that Century's failure to concede that the available limit of coverage was $1 million was a breach of contract and a breach of its duty to defend. [*See* Dkt. #46 in the First Action].

In any event, Century asks the Court to limit the discovery to the issue(s) arising after the First Action judgment, and to conduct an *in camera* review of a limited potion of its files (related only[4] to the conditional settlement  offer) under *Cedell v. Farmers Ins. Co. of Washington*, 176 Wn.2d 686 (2013).

---

[4] Century argues that the bad faith claim Abbot assigned to Dvojack is without merit as a matter of law because Abbot was not Century's insured, and he never tendered to Century the defense of the underlying claims against him.  This argument is persuasive, and Dvojack does not respond to it.  The Motion for Summary Judgment on that claim is GRANTED.

ORDER - 7

1    In his Response [Dkt. #43] to the Summary Judgment Motion, Dvojack acknowledges

2    that "bad faith" claims were asserted in the First Action.  But he argues that the pre-judgment

3    bad faith claims are on appeal to the Ninth Circuit, while the post-judgment bad faith claims are

4    being litigated here.  Dvojack argues, correctly, that this results in a (disfavored) "splitting" of

5    his claims.  But Dvorak argues that the remedy for this is for this Court to remand[5] the case to

6    Lewis County, where his "entire, unitary assigned bad faith claims will be for the state court to

7    decide."

8    The Court agrees that claim splitting should be avoided, where possible.  But remanding

9    this case to Lewis County would not solve the problem.  Dvojack has already appealed the Order

10   and Judgment in the First Action that Century claims (and Dvojack seemingly concedes)

11   adjudicated all of his pre-judgment, limits-related bad faith claims.  If and to the extent these pre-

12   judgment bad faith claims were adjudicated in the First Action and are now before the Ninth

13   Circuit, they cannot be litigated in Lewis County anymore than they can be litigated here.

14   Fortunately, there is a clear and logical break between the pre-judgment, limits-related

15   bad faith claims that were or which could have been asserted in the First Action, and the post-

16   judgment "conditional settlement" bad faith claim(s) that arose after that case was resolved.

17   The issue presented by both motions is whether any of the bad faith claims that pre-dated

18   the First Action judgment survived that judgment and can be litigated here.  The resolution of

19   this question will resolve the Motion for Summary Judgment, and, in turn, the Motion for a

20   Protective Order.

21

22

23

24   [5] Dvojack cites the Court's prior Order declining to re-open the First Action in favor of the Lewis County action, but that Order pre-dated the removal of this case from Lewis County.

## III. DISCUSSION

**A.  Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**B.  Res Judicata.**

Century's Motion is based on well-settled and familiar principles of *res judicata*.  It compares the insured's claims in the First Action to Dvojack's claims here, and correctly points out that both versions include broad allegations of bad faith.  Thus, it claims, the dismissal of the First Action operates to bar any "pre-judgment" bad faith claims that were, or could have been, litigated in that case.

Under *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  *Res judicata* prohibits a subsequent action where there is a

1   "concurrence of identity between the two actions in the following four respects: (1) persons and

2   parties; (2) cause of action; (3) subject matter; and (4) the quality of the persons for or against

3   whom the claim is made." *Kuhlman v. Thomas*, 78 Wn. App. 115, 897 P.2d 365, 368 (1995).

4        Century argues that the only element even arguably at issue here is the second, and

5   correctly urges the Court to determine whether the claims asserted here are the same as those

6   asserted in the First Action by evaluating four factors:

7        (1) whether rights or interests established in the prior judgment would be destroyed or

8   impaired by prosecution of the second action;

9        (2) whether substantially the same evidence is presented in the two actions;

10       (3) whether the two suits involve infringement of the same right; and

11       (4) whether the two suits arise out of the same transactional nucleus of facts.

12  *Citing Thompson v. King Cnty.*, 163 Wn. App. 184, 195, 259 P.3d 1138 (2011).

13       Century argues that the fourth of these factors is the most important, and that it is clearly

14  present here:  Dvojack's current claim that Century handled the defense of the underlying claim

15  in bad faith arises from the very same set of facts that were at issue in the First Action.  It cites

16  *Smith v State Farm Mut. Auto. Ins. Co.*, 2013 U.S. Dist. LEXIS 52564 (2013), for the proposition

17  that a second bad faith claim is barred by a first, where the Plaintiff seeks in both cases to redress

18  the same wrong.  In *Smith*, the plaintiff asserted in consecutive cases that State Farm had

19  wrongfully refused to provide her the full benefits of her UIM policy.  *Smith* held that the first

20  action—Plaintiff's claim that State Farm undervalued and inadequately investigated her UIM

21  claim—involved the same claim she sought to pursue in her subsequent bad faith action, based

22  on the same allegation, and seeking the same relief. It held that the claim was barred.

23       Neither of Dvojack's Responses addresses the *res judicata* issue.

24

1    The Court agrees that all of the pre-judgment bad faith claims asserted here were (or at

2    least could have been) litigated in the First Action.  Other than the post-judgment claim(s), the

3    claims asserted here are the same, under each of these factors.

4    First, the right or interest established in the First Action was the accuracy of Century's

5    claim that the available limit was $250,000, and not $1 million.  This determination was made as

6    a matter of law, based on the insurance contract.  The Lund parties' bad faith claims in the First

7    Action were inextricably intertwined with their primary claim—that the larger limit applied.

8    They claimed (as Dvojack does here) that Century failed to communicate to them a "within

9    limits" $1 million offer [*See* Dkt. #35 in the First Action, at p. 8], and that Century

10   impermissibly developed and used extrinsic evidence in support of its claim that the smaller,

11   wasting limit applied [*See* Dkt. #39 in the First Action, at pp. 4, 5].

12   The right established in that case—that the wasting limit applied and that the assertion of

13   it was not a breach of contract, a breach of the duty to defend, or otherwise "bad faith"—would

14   be destroyed, if the successful assertion of these same claims here resulted in a flatly contrary

15   result.

16   Second, the evidence that would be presented in this action is essentially the same

17   evidence that was in the first case—despite the fact that that action was resolved as a matter of

18   law.  This Court reviewed all of the evidence about the Star Tavern incident, the policy, and the

19   Lund parties' claim that Century was wrong, including the claim that it failed to communicate

20   and relied on extrinsic evidence.  It is possible, of course, that Century's own files contain

21   additional information that Dvojack would claim is evidence shedding light on these subjects,

22   but there is no basis for the conclusion that this evidence would affect the outcome.

23

24

1        Similarly, the "right" that the Lund parties alleged Century infringed in the First Action is

2  the same right that Dvojack claims Century infringed in this case—i.e., that Century's assertion

3  of the wasting limit was, basically, wrong.

4        Finally, and most importantly, the two actions involve or arise from the same nucleus of

5  transaction facts—the Star Tavern fight, the policy, and the dispute over the available limits for

6  the underlying claims.

7        The pre-judgment bad faith claims Dvojack seeks to assert here are the same claims that

8  were, or, at the very least, could have been asserted by the Lund Defendants in the First Action.

9  Those claims are that Century failed to communicate a "within (the asserted, larger) limits"

10  settlement offer, impermissibly developed and used extrinsic evidence to support its position that

11  the wasting limit applied, and broadly put its own monetary interests ahead of those of its

12  insureds.  Those claims were adjudicated in the First Action, and *res judicata* precludes the re-

13  litigation of them here.

14        The same cannot be said with respect to the post-judgment bad faith claims asserted by

15  Dvojack here.  These include the claim that even after the judgment, Century offered less than

16  what was left of the wasting limit, and that it conditioned even that offer on a release of itself as

17  well as its insureds.  These claims were not—could not possibly have been—litigated in the First

18  Action.  They are not barred by *res judicata* and can proceed.

19        Century's Motion for Summary Judgment on the pre-judgment bad faith claims is

20  GRANTED and the motion on the post-judgment claims is DENIED.

21  **C. Motion for a Protective Order.**

22        The resolution of the scope of the remaining claims necessarily resolves Century's

23  Motion for a Protective Order.  Dvojack seeks broad discovery into Century's handling of the

24  underlying claims, its coverage analyses, and communications between and among Century and

1  its various in house and outside attorneys, from the date of the claim to now.  This is facially

2  overbroad in light of the resolution of the First Action and the Court's resolution of the Motion

3  for Summary Judgment, above.

4      The scope of the discovery Dvojack seeks does not account, at all, for the fact that much

5  of this case has been resolved and appealed.  His claim that all "settlement-related"

6  communications are discoverable, even without *in camera* review, is simply not accurate—it

7  ignores the preclusive effects of the Court's prior judgment on the same or similar claims.

8      Similarly, Dvojack's claim that Century waived the attorney-client privilege and work

9  product protections simply by filing a Declaratory Judgment action to determine the available

10  limits in the First Action is not correct.  *Pappas v Holloway,* 114 Wn.2d 198, 207 (1990), does

11  not support this conclusion.  The "affirmative act" that triggered the waiver there was the client's

12  malpractice claim against his former attorney.  There are limited, if any, parallels between that

13  situation and this, and Dvojack cites no case supporting the claim that an insurer broadly waives

14  the attorney-client privilege and work product doctrine protections by filing a Declaratory

15  Judgment Action against its insured, when a dispute arises over coverage or available limits.

16      Indeed, it is not difficult to imagine a successful bad faith claim against an insurer who

17  *failed* to promptly file such an action in the face of such a dispute.  And, as Century points out,

18  the entire, cumbersome and insured-friendly *Cedell* analysis would be wholly unnecessary if the

19  answer were instead that the insurer's Dec Action operated as a blanket waiver of the attorney

20  client and work product protections.

21      Dvojack's request for information about the claims of other insureds in potentially similar

22  claims is DENIED, and the Motion for a Protective Order on this discovery is GRANTED.

23

24

1   Further, Century need not document or produce for *in cam*era review communications or

2   information related to any re-insurance agreements.

3       Otherwise, consistent with *Cedell v. Farmers Ins. Co.,* 176 Wn.2d 686 (2013), and this

4   Court's own best interpretation of what that case requires as a practical matter (*See Phila. Inem.*

5   *Ins. Co. v. Olympia Early Learning Center,* 2013 U.S. Dist. LEXIS 92067 (W.D. Wash. 2013),

6   the Court will ORDER that Century broadly provide the following for in *camera* review:

7       All documents and communications generated by or transmitted between or among

8   Century and its in-house or outside claims adjusters or counsel, and outside defense counsel,

9   regarding the underlying claims and the settlement thereof—generally, its "claims file"—

10  *LIMITED* to documents or communications drafted, finalized, created or transmitted between

11  March 13, 2013 (the date of the Order in the First Action) and April 22, 2013 (the date that

12  Century was informed of the covenant settlement), inclusive.

13      Century will also provide to the Court and to Dvojack a complete privilege log of all

14  documents and communications regarding the underlying claims and the settlement thereof, that

15  it claims are protected from discovery by the attorney-client privilege or the work product

16  protection, *LIMITED* to documents or communications drafted, finalized, created or transmitted

17  between March 13, 2013 (the date of the Order in the First Action) and April 22, 2013 (the date

18  that Century was informed of the covenant settlement), inclusive.

19      Century should also provide its proposed redactions to the documents so produced.  It

20  should produce these materials within 14 days of the date of this Order.

21      The Court will promptly review these documents *in camera* consistent with *Cedell* and

22  determine whether there is a "foundation for the claims of bad faith to proceed" with regard to

23  the claims that remain in the case.

24

ORDER - 14

1    Except for the production described above, Century's Motion for a Protective Order is

2  GRANTED.

3    IT IS SO ORDERED.

4    Dated this 13TH day of February, 2014.

5

6    _____
     RONALD B. LEIGHTON
7    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24